IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80405-7 |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES H. MANUEL, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — James Manuel challenges an order from King County Superior Court restoring his right to possess a firearm under RCW 9.41.040(4) as to his conviction from that court and refusing to do so as to convictions from Pierce County Superior Court and Lakewood Municipal Court.

We hold RCW 9.41.040(4)(b) is not a jurisdictional limit on a superior court's authority to restore a defendant's firearm rights. The statute gives a petitioner two venue options, one of which is any superior court of conviction and the other is the superior court in the county of the petitioner's residence. King County Superior Court, as a superior court of conviction, was an appropriate venue for Manuel to obtain a full restoration of his firearm rights. We reverse and remand for entry of an order restoring Manuel's firearm rights.

FACTS

Manuel has nine convictions that led to the entry of orders prohibiting him from possessing firearms under RCW 9.41.040. Manuel, a Pierce County resident, was convicted in Pierce County Superior Court of seven felony offenses between 1998 and 2004. On July 13, 2006, the King County Superior Court convicted Manuel of burglary and revoked his right to possess firearms. In 2010, Manuel was convicted of a separate, domestic violence misdemeanor offense in Lakewood Municipal Court.

On April 21, 2019, Manuel filed a petition to restore his right to possess firearms with the King County Superior Court under the same cause number as his 2006 felony conviction. The State agreed that Manuel is statutorily eligible to have his firearm rights restored but argued that King County Superior Court "lacks jurisdiction to grant the petitioner's request on the eight Pierce County Convictions" under RCW 9.41.040(4)(b).

The trial court found Manuel was eligible for restoration under the conditions set forth by RCW 9.41.040(4)(a). The court additionally found that it was the court of record that ordered Manuel's prohibition on possession of a firearm for his 2006 prohibition, but was neither the court of record that ordered the prohibition on possession of a firearm on the remaining convictions nor the superior court in the county in which Manuel resides. The trial court entered an order restoring Manuel's firearm rights only relating to the King County conviction. Manuel appeals the denial of a full restoration of his firearm rights.

## ANALYSIS

A. RCW 9.41.040(b) does not limit superior court jurisdiction

Manuel contends King County Superior Court has the authority to restore his firearm rights as to any and all of his convictions under RCW 9.41.040(4)(b)(i). RCW 9.41.040(4)(b) provides:

> (b) An individual may petition a court of record to have his or her right to possess a firearm restored under (a) of this subsection (4) only at:
>
> (i) The court of record that ordered the petitioner's prohibition on possession of a firearm; or
>
> (ii) The superior court in the county in which the petitioner resides.

The State does not dispute that King County Superior Court is a "court of record" and it was a court that ordered Manuel's prohibition on the possession of a firearm. But it argues King County Superior Court lacks jurisdiction to fully restore Manuel's firearm rights because it was not "the" court of record that prohibited Manuel's possession of firearms as to his Pierce County and Lakewood convictions. We conclude the statute cannot be read to limit King County Superior Court's jurisdiction.

Whether a court has subject matter jurisdiction is a question of law reviewed de novo. Crosby v. Spokane County, 137 Wn.2d 296, 301, 971 P.2d 32 (1999). Jurisdiction refers to the court's power and authority to act. ZDI Gaming, Inc. v. Wash. State Gambling Comm'n, 173 Wn.2d 608, 616, 268 P.3d 929 (2012). Article IV, section 6 of the Washington State Constitution defines the superior court's jurisdiction and grants to it original jurisdiction over a broad category of cases. Id. The legislature may not change that jurisdiction without amending the constitution.

- 3 -

Id. And while the legislature may specify the appropriate venue for a particular dispute to be resolved, they may not pass legislation to limit the subject matter jurisdiction of superior courts county by county.[1] See, e.g., id.; Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 317, 76 P.3d 1183 (2003); Young v. Clark, 149 Wn.2d 130, 133, 65 P.3d 1192 (2003); Shoop v. Kittitas County, 149 Wn.2d 29, 37, 65 P.3d 1194 (2003); J.A. v. State, 120 Wn. App. 654, 657-58, 86 P.3d 202 (2004).

In ZDI Gaming, the supplier of pull-tab machines filed a petition in Pierce County Superior Court, challenging Gaming Commission regulations and its decision that ZDI's machines violated those regulations. 173 Wn.2d at 614. The State contended that RCW 9.46.095, which provided that "[n]o court of the state of Washington other than the superior court of Thurston county shall have jurisdiction over any action or proceeding against the commission," granted exclusive jurisdiction to only that superior court. Id. at 616.

The Supreme Court rejected the State's interpretation because it would result in the statute being unconstitutional under article IV, section 6. Id. at 619.

> Just as our constitution does not allow the legislature to decree that only King County judges have subject matter jurisdiction to hear child dependency actions or that only Pend Oreille County judges have subject matter jurisdiction to hear shareholder derivative actions, our constitution does not allow the legislature to decree that only Thurston County judges have subject matter jurisdiction to hear cases involving the Gaming Commission.

Id. The Supreme Court concluded it could interpret the statute as constitutional by deeming it to be a venue provision, rather than a jurisdictional limit. Id.

---

[1] A jurisdictional restriction limits the "type of controversy" that the court has authority to hear; a venue provision requires a litigant to adjudicate a dispute in a particular setting, location, or place. ZDI Gaming, 173 Wn.2d at 617-18.

Under the reasoning of ZDI Gaming, we cannot interpret RCW 9.41.040(b) as a jurisdictional restriction and must, instead, interpret it as a venue provision. As a result, King County Superior Court had the jurisdiction to adjudicate Manuel's petition. The sole question before us is whether venue was proper in King County Superior Court.

B. RCW 9.41.040(b)(i) makes King County Superior Court a proper venue for Manuel's restoration petition

Manuel contends that, under RCW 9.41.040(4)(b)(i), he had the right to file his petition in King County Superior Court and nothing in the language of the statute suggests he must travel around the state and file petitions in separate jurisdictions to obtain a full restoration of his firearm rights. We agree with Manuel.

Questions of statutory interpretation are reviewed de novo. State v. Swanson, 116 Wn. App. 67, 70, 65 P.3d 343 (2003). The purpose of statutory interpretation is to give effect to the legislature's intent, which is derived solely from the statute's plain language. State v. Dennis, 191 Wn.2d 169, 172, 421 P.3d 944 (2018). Courts discern plain language by considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. Id. at 172-73.

If there is more than one reasonable interpretation of a statute's plain language, then it is ambiguous. Swanson, 116 Wn. App. at 70. If a statute is ambiguous, then the court relies on principles of statutory construction, legislative history, and relevant case law to determine legislative intent. Payseno v. Kitsap County, 186 Wn. App. 465, 469, 346 P.3d 784 (2015). After such analysis, if a

criminal statute still remains ambiguous, the rule of lenity requires courts to construe the statute strictly in favor of the defendant. Id. at 470.

We conclude King County Superior Court is an appropriate venue for Manuel to petition for the full restoration of his firearm possession rights. First, the statute is ambiguous and can be reasonably read as both Manuel and the State propose. The plain language of RCW 9.41.040(4)(b)(i) does not answer whether one superior court of conviction may fully restore firearm rights lost as the result of convictions in two or more counties. Second, the duty to restore firearm rights is ministerial and there is no basis for deferring to a Pierce County judge as to whether Manuel is eligible for the restoration of his gun rights. Finally, the rule of lenity supports construing the statute in Manuel's favor.

### 1. RCW 9.41.040(4)(b)(i) is ambiguous

Manuel and the State both contend RCW 9.41.040(4)(b)(i) is unambiguous and not susceptible to more than one reasonable interpretation. We disagree.

In State v. Swanson, this court had the opportunity to interpret RCW 9.41.040 to determine if it gives a superior court the discretion to deny a restoration petition. 116 Wn. App. at 70. In resolving this question, the court recognized that the statute was "not a model of clarity" and found its plain language "unhelpful." Id. at 70-71. The court noted that while the statute enumerated requirements for restoration, it did not "espouse any procedure to be followed," did not set time limits for filing such a petition, did not refer to any applicable burden of proof, and did not expressly confer or refer to the court's discretion. Id. at 71.

Here, the venue provision is similarly ambiguous because it does not address the situation presented here—a petitioner with convictions from multiple

superior courts. While the legislature added the venue provision at issue here in 2011, after our decision in <u>Swanson</u>, the language is still "not a model of clarity."

The State contends the legislature's use of the definite article "the" in the phrases "the court of record" and "the petitioner's prohibition" suggests that Manuel can only file a petition in the particular court that entered the gun rights order. <u>See CSX Transp., Inc. v. Island Rail Terminal, Inc.</u>, 879 F.3d 462, 471 (2d Cir. 2018) ("The use of the definite article 'the' indicates a singular court."); <u>Am. Bus. Ass'n v. Slater</u>, 231 F.3d 1, 4-5 (D.C. Cir. 2000) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an'."). Under this reasonable interpretation, a petitioner could only ask the court that convicted him to modify the judgment and sentence entered by that particular court. The effect would be a partial, rather than full, restoration of firearm rights.

Under another reasonable interpretation, and the one advanced by Manuel, the statute grants the same unconditional restoration authority to any superior court that has convicted the petitioner. The phrase "the court of record" in paragraph (b)(i) follows and modifies the more general phrase "a court of record" in the immediately preceding clause. We could read the entire sentence together and conclude that a petitioner may file with <u>any</u> court of record for a full restoration of gun rights as long as the one chosen actually entered an order prohibiting Manuel from possessing a firearm. Under this reasonable interpretation, King County Superior Court would be an appropriate venue to address Manuel's petition for any and all of his convictions.

Because the plain language of RCW 9.41.040(4)(b) does not unambiguously determine whether a convicting superior court can fully restore the gun rights of a petitioner with multiple convictions from multiple superior courts, the statute's language "is unhelpful due to various omissions." See Swanson, 116 Wn. App. at 70. We conclude the language of the venue provision of RCW 9.41.040(4)(b)(i) is ambiguous.

### 2. The legislative history supports Manuel's interpretation

The State argues the legislative history supports its narrow, restrictive interpretation of RCW 9.41.040(4)(b)(i). We disagree with this contention as well because the legislative history actually supports Manuel's interpretation.

First, no superior court—wherever located—has the discretion to deny an eligible petitioner the restoration of this civil right. In Swanson, the trial court found that Swanson, despite meeting the three eligibility requirements of RCW 9.41.040(4)(a), was not safe to possess firearms and denied his petition. 116 Wn. App. at 70. This court reversed, concluding the legislature did not give superior courts the discretion to deny firearm rights if a petitioner met the statutory eligibility requirements. Id. at 69. We held that RCW 9.41.040(4) imparts a non-discretionary, ministerial duty to restoring courts. Id.

After this court's 2003 decision in Swanson, the legislature added the venue provision at issue here. See H.B. REP. ON H.B. 1455, 62d Leg., Reg. Sess. (Wash. 2011). The legislature, however, did not amend RCW 9.41.040(4)(a) to give discretion to superior courts to deny restoration to someone a local judge deems unsafe. See H.B. 1455, 62d Leg., Reg. Sess. (Wash. 2011); RCW 9.41.040(4). The legislature is presumed to know how courts have construed and applied the

statute they choose to amend. State v. Roggenkamp, 153 Wn.2d 614, 629, 106 P.3d 196 (2005). Because we presume the legislature was aware of our holding in Swanson and chose not to modify RCW 9.41.040(4)(a) to grant discretion where we concluded none existed, we can only conclude from this legislative history that a court's duty to restore firearm rights remains purely ministerial in nature. We will construe the venue provision in light of that duty. See Swanson, 116 Wn. App. at 78; Roggenkamp, 153 Wn.2d at 629.

The State relies on the following excerpt from a 2011 bill report as evidence of the legislature's intent to restrict the places where a petitioner may seek the restoration of firearm rights:

> The petitioner should go back to the county where the person lost the right because that is the jurisdiction that knows the person and his or her past behavior. Some individuals are filing in jurisdictions that they have no connection with because they are trying to find a court that is more favorable to restoring firearm rights. These petitions should be filed in the jurisdiction where the person lives or where the loss of firearms rights occurred so that all relevant information that may be contained in local databases, such as gang databases, is available to the court making the determination of whether the person should have his or her firearm rights restored.

H.B. REP. ON H.B. 1455, 62d Leg. Sess. (Wash. 2011). We find this bill report excerpt less than persuasive of any intent relevant here. In making a restoration determination, superior courts of different counties are not permitted to deny a petition simply because of information a judge may find in a "local database" or "gang database."[2] See Swanson, 116 Wn. App. at 78; RCW 9.41.040(4)(a) (requiring individuals to complete the conditions of their sentence while avoiding

---

[2] We also note that the reference to "gang databases" in this bill report evidences stereotypes that are inconsistent with the eligibility criteria set out in the statute. Suspected gang affiliation is not a basis for refusing to restore a petitioner's gun rights.

certain charges and convictions). In fact, both King County Superior Court and Pierce County Superior Court have equal access to the facts necessary to make a determination on Manuel's petition. See chapter 2.68 RCW (establishing the Judicial Information System which contains information about an individual's criminal activity to any court in the state).

Because restoring courts have no discretion to deny a petition if statutory eligibility criteria are met, we can see no basis for concluding that Pierce County Superior Court is a more appropriate venue than King County Superior Court to fully restore Manuel's gun rights lost because of his Pierce County convictions. Restoration is a yes-or-no question, so if the convicting court is eligible to restore his right as to one conviction, there is no reason why it cannot restore his right prohibited by other convictions. See Dennis, 191 Wn.2d at 177 ("Given that a court's role in the restoration process is purely ministerial, the precipitating event for eligibility for restoration is when the statutory requirements are met, not when the petition is filed.").

Moreover, because the issue is ministerial and there can be no room for discretion between courts, the statute itself would obviate the need for any petitioner to forum shop for a court they deem more favorable to them or to the restoration of firearm rights. See Swanson, 116 Wn. App. at 78; H.B. 1455 (mentioning elimination of forum shopping as a goal of the venue provision).

Second, the State's interpretation would impose requirements that do not exist in the statute. Expressio unius est exclusio alterius, a common principle of statutory construction, holds that "[w]here a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that

all things or classes of things omitted from it were intentionally omitted by the legislature." Swanson, 116 Wn. App. at 67, 75 (internal quotation marks omitted) (quoting Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1, 77 Wn.2d 94, 98, 459 P.2d 633 (1969)).

It is undisputed that under RCW 9.41.040(4)(b)(ii), Pierce County Superior Court has full authority to perform the ministerial function of fully restoring Manuel's rights as to any convictions regardless where imposed. Under the State's interpretation of RCW 9.41.040(b)(i), if Manuel chose not to file in Pierce County Superior Court, he would have to petition each court that convicted him, which would not only be unnecessarily duplicative and a waste of judicial resources, but would also impose requirements that are not spelled out in the statute. For many individuals seeking the restoration of civil rights after a felony conviction, such a requirement would be prohibitively time-consuming and expensive.[3] "Expressio unius est exclusio alterius commands that RCW 9.41.040(4) imposes no burden beyond the three enumerated" in subsection (a), id. at 76, and consequently supports the proposition that both venues have full authority to restore Manuel's right to possess a firearm.

The legislature unambiguously intended to create some nexus between a petitioner and the restoring court, whether that nexus is based on their conviction history or residency. See H.B. 1455 (contrasting venue before and after the amendment and confirming that previously petitioners could restore their rights in any court in the state). Before the legislature passed the 2011 venue provision,

---

[3] When this court has two competing interpretations of an ambiguous statute and one of these interpretations would lead to a disproportionate impact on historically marginalized communities, we cannot blithely accept that the legislature intended any such a result.

- 11 -

Manuel could have petitioned in 39 different courts; now he must choose between the superior court of the county in which he lives or the superior court in any county in which he was convicted of a qualifying crime. In either case, there is a nexus between Manuel and the restoring court. There is no evidence that the legislature intended to impose further burdens. We therefore conclude the legislative history supports Manuel's contention that King County Superior Court, as a court of record that imposed a firearm prohibition, is an appropriate venue for the restoration of Manuel's firearm rights.

### 3. The rule of lenity also supports our conclusion

Finally, even if the legislative history were inconclusive, Manuel argues the rule of lenity requires us to adopt his interpretation. We agree. If a criminal statute's plain language is ambiguous, the rule of lenity requires courts to strictly construe the statute in favor of the defendant. Payseno, 186 Wn. App. at 473. The rule of lenity applies in post-conviction contexts. Id. In Payseno, the court was asked to interpret RCW 9.41.040(4)(a)(ii)(A), which required a petitioner to prove he had avoided conviction or charges for a consecutive five-year period. Id. At issue was whether the time period applied to any five year period or to the five years immediately preceding the petition. Id. Applying the rule of lenity, the court held that the statutory period could be any consecutive five years, id., an interpretation the Supreme Court confirmed in Dennis, 191 Wn.2d at 178.

Here, the rule of lenity supports an interpretation of the statute that does not arbitrarily require Manuel to travel to multiple different jurisdictions in order to reclaim his rights post-conviction. The State argues that Manuel could have avoided any procedural burdens by initially filing in Pierce County Superior Court.

While this may be true, both parties agree that King County Superior Court is an appropriate venue. Accordingly, since the statute grants to Manuel the right to choose the venue in which he files, an interpretation that strictly requires Manuel to seek restoration in a piecemeal process from multiple courts disfavors the criminal defendant. The rule of lenity supports construing RCW 9.41.040(4)(b) in Manuel's favor.

We thus conclude that the text, legislative history, and the rule of lenity support an interpretation of RCW 9.41.040(4)(b) that allows a petitioner to seek the full restoration of firearm rights from any superior court in which that petitioner was convicted of a felony and in which an order prohibiting the possession of firearms was entered, even when that petitioner has prior felony convictions from other superior courts.

Reversed and remanded for further proceedings consistent with this opinion.

_Andrus, A.C.J._

WE CONCUR: